# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:94-CR-68 |
| Plaintiff, | : | |
| | : | JUDGE CHRISTOPHER A. BOYKO |
| vs. | : | |
| | : | **MOTION FOR SENTENCE** |
| JASON JARVIS, | : | **REDUCTION PURSUANT TO 18 U.S.C.** |
| | : | **§ 3582(c)(1)(A)(i) FOR** |
| Defendant. | : | **COMPASSIONATE RELEASE** |
| | : | |

The defendant, Jason Jarvis, by and through counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for an order reducing his sentence and placing him on home confinement based on the extraordinary and compelling circumstances are present in his case.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216)522-4856   Fax:(216)522-4321
E-mail: jeffrey_lazarus@fd.org

Attorney for Jason Jarvis

1

**MEMORANDUM IN SUPPORT**

I.     **Introduction and Procedural History**

Jason Jarvis has served nearly thirty actual years of a forty-year sentence for a series of bank robberies he committed with others in 1994. In recent years, the statutes for which he was convicted have been amended, and under current law, Mr. Jarvis would be serving a significantly less sentence. Given this disparity, the severe length of sentence he is serving, the amount of time he has served, and the rehabilitative efforts he has undertaken, extraordinary and compelling circumstances exists to grant him a reduction under U.S.S.G. § 1B1.13(b)(6) and 18 U.S.C. § 3582(c)(1).

In 1994, Jason Jarvis went to trial in a multi-defendant bank robbery case before the Honorable Judge Paul Matia. The indictment included 17-counts, of which Mr. Jarvis was convicted of ten separate counts. Mr. Jarvis was convicted of four separate bank robberies, under 18 U.S.C. § 2113 (Counts 5, 9, 11, 13), and conspiracy to commit bank robbery under 18 U.S.C. § 371 (Count 15). Dkt. 124, p. 1. For these counts, Mr. Jarvis received a guideline sentence of 135 months of imprisonment. Dkt. 124, p. 2. Mr. Jarvis was also sentenced to five separate counts of violation of 18 U.S.C. § 924(c) (Counts 6, 10, 12, 14, and 16). Dkt. 124, p. 2. For these convictions, Mr. Jarvis received mandatory and consecutive sentences totaling 85 years in prison. Under the law at the time, the first § 924(c) conviction received a five-year mandatory consecutive sentence, and each subsequent conviction was another 20 years. With five § 924(c) convictions, he received 5 + 20 + 20 + 20 + 20, or 85 years, which was to be served consecutive to his 135-month guideline sentence, for a total of 96 years, or 1,155 months. At the time of sentencing, Mr. Jarvis was 20 years old, had no prior adult convictions, and his entire juvenile conviction record was two drug abuse charges. *See* Presentence Report, p. 12.

Twenty years into his federal sentence, the Supreme Court issued *Rosemond v. United States*, 134 S. Ct. 1240 (2014). Following *Rosemond*, Mr. Jarvis filed a motion for post-conviction relief. Dkt. 533. Two years later, on May 17, 2017, Mr. Jarvis and the government entered into a Joint Resentencing Agreement. Dkt. 547. The parties agreed that in light of *Rosemond*'s holding, Mr. Jarvis's convictions in Count 10, Count 14, and Count 16 should be dismissed. Dkt. 547, PageID 1098. The parties agreed that for his convictions in the remaining counts (5, 6, 9, 11, 12, 13, and 15) his aggregate sentence should be 480 months (40 years). Dkt. 547, PageID 1098. This consisted of: 180 months for Counts 5, 9, 11, and 13, the bank robbery counts; 60 months for Count 15, for bank robbery conspiracy, to run concurrently; 60 months on Count 6, the first § 924(c) charge, to run consecutively; and 240 months on Count 12, the second 924(c) charge, to also run consecutively. Dkt. 547, PageID 1098. This Court accepted the recommendations of the parties and imposed a sentence of 480 months. Dkt. 551, PageID 1186.

In May 2020, following the passage of the First Step Act and the COVID-19 pandemic, Mr. Jarvis filed for compassionate release with this Court. Dkt. 574, Motion for Sentence Reduction. At that time, Mr. Jarvis was being housed at FCI Elkton, a facility where a number of federal inmates had died due to COVID-19. Relying on the conditions prevalent in FCI Elkton, Mr. Jarvis's personal health issues, and the circumstances surrounding his sentence, he sought a reduction in sentence. Dkt. 574; Dkt. 579. This Court denied Mr. Jarvis's motion, finding his health issues did not constitute extraordinary and compelling reasons to reduce his sentence. Dkt. 580, PageID 1609-12. This Court further held that the disparity based on a change in sentencing cannot serve reasons to grant a sentence reduction. Dkt. 580, PageID 1612.

Mr. Jarvis appealed this Court's ruling, which the Sixth Circuit affirmed. *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021). The Sixth Circuit, as a matter of first impression, held the

3

non-retroactive changes to the sentencing statutes could not constitute extraordinary and compelling reasons to reduce Mr. Jarvis's sentence. Mr. Jarvis sought en banc review from the Sixth Circuit, which was denied. Dkt. 628. As the Sixth Circuit's holding conflicted with other circuits, Mr. Jarvis filed a petition for writ of certiorari to the United States Supreme Court, which was denied on January 13, 2022. Dkt. 633; Dkt. 635.

On November 1, 2023, amendments to the Sentencing Guidelines took effect. These amendments specifically amended U.S.S.G. § 1B1.13, the guideline governing sentence reductions, expanding the scope of what constitutes "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13(b) (eff. Nov. 1, 2023). One such addition was sub-section (b)(6), which states:

> Unusually Long Sentence – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

Relying on this guideline, Mr. Jarvis now seeks a sentence reduction. He has served nearly 30 actual years. Further there has been a change in the law, which has not been made retroactive, but produces a gross disparity between the sentence he is serving and the likely sentence that would be imposed today. As detailed *infra*, he would likely be sentenced to 25 years if sentenced today, thus creating a gross disparity with his current 40-year sentence. And, Mr. Jarvis has demonstrated exemplary behavior in the prison and made significant efforts towards rehabilitation. *See infra*. Therefore, under 18 U.S.C. § 3582(c)(1), he asks this Court to find that extraordinary and compelling circumstances exist to warrant a sentence reduction.

**II.      Mr. Jarvis has exhausted his administrative remedies and may file with this Court**

On November 1, 2023, Mr. Jarvis submitted a letter to the Warden of FCI Elkton, requesting a sentence reduction under U.S.S.G. § 1B1.13(b)(6). A copy of the request is attached as Exhibit A. On November 6, 2023, the Warden of FCI Elkton responded denying Mr. Jarvis's request. The Warden's response seems to indicate that the Warden does not have the authority to grant such a reduction, which is in error. Further, the Warden makes reference to U.S.S.G. Amendment 821, which is the retroactive guideline amendment that eliminates the status points – two criminal history points when a defendant was on probation at the time of their federal offense – under U.S.S.G. § 4A1.1. Mr. Jarvis did not seek a sentence reduction under U.S.S.G. Amendment 821, but instead seeks a sentence reduction under 18 U.S.C. § 3582(c)(1) and U.S.S.G. § 1B1.13(b)(6) for an unusually long sentence. He has therefore exhausted his administrative remedies and may filed a motion with this Court under 18 U.S.C. § 3582(c)(1). *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020).

**III.     Mr. Jarvis is eligible for relief under U.S.S.G. § 1B1.13(b)(6)**

Title 18 U.S.C. § 3582(c)(1)(A) provides this Court with the discretion to modify a defendant's sentence. Congress detailed that such may be granted when a defendant demonstrates "extraordinary and compelling reasons to warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress, however, did not define what constitutes "extraordinary and compelling reasons." *See United States v. McCall*, 56 F.4th 1048, 1053 (6th Cir. 2022). As the Sixth Circuit, sitting en banc, held, "[i]nstead, [Congress] delegated the task to the Sentencing Commission, instructing it to issue 'general policy statements . . . describing what should be considered extraordinary and compelling reasons for a sentence reduction, including the criteria to be applied and a list of specific examples.'" *McCall*, 56 F.4th at 1053 (quoting 28 U.S.C. § 994(t)). The Sentencing

5

Commission did so by enacting U.S.S.G. § 1B1.13, which set forth subsets of circumstances that may constitute "extraordinary and compelling reasons." This Court, the Sixth Circuit, and several other circuits found the former version of U.S.S.G. § 1B1.13 did not include changes to the law that created sentencing disparities. Yet, on November 1, 2023, the Sentencing Commission exercised its discretion to amend U.S.S.G. § 1B1.13 and increased the scope of what constitutes "extraordinary and compelling reasons" to grant a sentence reduction. The current version of the guideline permits this Court to consider unusually long sentences under U.S.S.G. § 1B1.13(b)(6) and sets forth certain criteria as to what meets this guideline. Mr. Jarvis details herein why he meets those criteria. However, just meeting the criteria in U.S.S.G. § 1B1.13(b)(6) is not enough. As set forth in 18 U.S.C. § 3582(c)(2), this Court must still consider "the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Mr. Jarvis now details why such a reduction is warranted under 18 U.S.C. § 3582(c).

    **A.**     **Jason Jarvis is serving an unusually long sentence and has served at least ten years of imprisonment, which would not be imposed today due to changes in the law**

There is no denying that Mr. Jarvis has served more than ten years, and in fact, come March 2024, he will have served 30 actual years in the Bureau of Prisons. He was originally sentenced to a term of 96 years for his offense, 135 months under the guidelines, consecutive to 85 years of mandatory time for five separate convictions under 18 U.S.C. § 924(c). Under the law at the time, the first § 924(c) conviction received a five-year mandatory consecutive sentence, and each subsequent conviction was another 20 years, thus totaling 85 years on the § 924(c) counts alone.

This type of sentencing scheme, the stacking of § 924(c) convictions, has come under scrutiny. *See United States v. Holloway*, 68 F.Supp.3d 310, 313 (E.D.N.Y. July 28, 2014) (Judge

6

John Gleeson detailing the unfair practices of such § 924(c) stacking, stating "black defendants have been disproportionately subjected to the stacking of 924(c) counts"; *see also id*. at n. 8 (citing U.S. Sentencing Comm'n, Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System ("Mandatory Minimum Report"), at 363 (Oct. 2011)).[1] As a result of these disparities, Congress passed the First Step Act of 2018, which included a provision that ended such a practice. Section 403 of the First Step Act amended 18 U.S.C. § 924(c) to prevent the stacking of mandatory minimums from the same case, but only permitted the increased mandatory minimum to go into effect if there was a prior conviction. *See* Section 403 of the First Step Act, 132 Stat. 5194, 5222 (December 21, 2018).

Thus, following the First Step Act, under current law, Mr. Jarvis would not have received the same sentence today. Instead, he would have received five years for each of the five § 924(c) charges (Counts 6, 10, 12, 14, and 16), totaling 25 years, plus 135 months (11 years) for the bank robbery counts (Counts 5, 9, 11, 13, and 15). Thus, if sentenced today, under the convictions he received in 1994, he would receive a total sentence of 36 years. Yet, as a result of the *Rosemond* case, Mr. Jarvis entered into a resentencing agreement with the government in 2017, which resulted in the dismissal of Counts 10, 14, and 16. Dkt. 547, PageID 1098. Thus, without these counts, Mr. Jarvis would receive five-year sentences for the § 924(c) convictions in Counts 6 and 12. Under current law, each of these two § 924(c) convictions would be five years (previously five years plus twenty years). He is currently serving 25 years for his stacked § 924(c) sentences, plus fifteen years for the guidelines, or 40 years total. Under current law, however, he would instead receive ten

---

[1] Available at: *http://www.ussc.gov/news/congressional-testimony-and-reports/mandatory-minimum-penalties/report-congress-mandatory-minimum-penalties-federal-criminal-justice-system*.

years for his § 924(c) convictions in Counts 6 and 12, which would be consecutive to his fifteen-year guideline sentence (Counts 5, 9, 11, 13, and 15), or a total of 25 years.

Therefore, a "gross disparity" exists between Mr. Jarvis's sentence of 40 years and the 25-year sentence he would be serving if current law applied. Under U.S.S.G. § 1B1.13(b)(6), this disparity between Mr. Jarvis's current sentence and his would-be sentence under current law constitutes extraordinary and compelling reasons to grant a reduction.

**B. Mr. Jarvis's individualized circumstances further support a reduction**

As set forth in U.S.S.G. § 1B1.13(b)(6), even when there exists a gross disparity between a defendant's current sentence and their likely sentence under current law, the district court must still evaluate "full consideration of the defendant's individualized circumstances." Doing so supports a reduction for Mr. Jarvis. At the time of his offenses, Jason Jarvis was nineteen years old, he had no prior adult convictions, and his entire juvenile conviction record was two drug abuse charges. *See* Presentence Report, p. 12. He committed heinous and violent offenses but was heavily influenced by his co-defendants. Not a day goes by that he does not regret his stupid and immature actions in 1994. He has no excuse for what he did, and he has spent the last 30 years trying to make amends for the offenses committed by a nineteen-year-old kid. Now, 49 years old, he spent his entire twenties, thirties, and forties in prison. He is due to be released from the Bureau of Prisons on June 11, 2028. His requested sentence reduction would result in him being relieved of the final four and a half years of his incarceration.

During his nearly 30 years of incarceration, he has been a model inmate. Attached to his 2015 motion were a number of exhibits that demonstrated his rehabilitative efforts from 1994 through 2015. Specifically, he included his inmate skills development plan, dated April 30, 2015. Dkt. 533-6, PageID 668-98. Between 1994 and 2015, Mr. Jarvis incurred five disciplinary actions:

8

two for being absent from assignment, two for refusing to obey an order, and one for possessing drugs/alcohol. Yet all five infractions occurred between 1994 and 1998. Dkt. 533-6, PageID 674. Between 1998 and 2021, he had no infractions. In 2021, Mr. Jarvis was disciplined in the prison for possession of alcohol. But for this single infraction in 2021, Mr. Jarvis has not had any other rule infractions since 1998 and has been an exemplary inmate.

In his 2015 motions, Mr. Jarvis attached thirty-two certificates of achievement in Bureau of Prisons rehabilitative programs. Dkt. 533-7, PageID 699-730. Some of the highlights of these programs are: victim impact; drug education; parenting classes; computer classes; business classes; and classes for attaining employment. Mr. Jarvis has also completed six college-level courses, for a total of 16 credit hours, in which he obtained three As and three Bs. Dkt. 533-8, PageID 731-33. In his 2020 motion for relief, Mr. Jarvis provided documentation that the Bureau of Prisons evaluated his "recidivism risk level" and deemed him to be a "minimum," for which he was approved to be sent to a lower-security facility. Dkt. 579-3, PageID 1606. He incorporates all those exhibits and certificates by reference into this motion.

Mr. Jarvis now provides this Court with additional written documentation detailing his efforts in the Bureau of Prisons towards rehabilitation. Attached as Exhibit B are twelve additional pages of Mr. Jarvis's efforts in the prison. Mr. Jarvis has completed "Overcomers Mentor Training Program," a psychological program for inmates to improve decision-making. Ex. B, pp. 1-2. The program only permits inmates who have shown a "marked degree of rehabilitation and have a sincere desire to assist in the changing of lives." Ex. B, p. 1. The prison's Deputy Chief of Psychology authored a letter that Mr. Jarvis did not only complete the program but a "willingness to be an asset and to stand for the change this program represents." Ex. B, p. 1. He also includes a list of all the education courses that he has completed to date. Ex. B, pp. 3-5. This list, which dates

back to 1998, shows that Mr. Jarvis has taken 90 different education courses. In addition to those 90 courses, Mr. Jarvis has completed twelve different courses related specifically to drug treatment and education and is currently enrolled in three additional programs. Ex. B, p. 6. Mr. Jarvis is also enrolled in other programs, such as anger management, improving his wellness, emotional self-regulation, and criminal thinking. Ex. B, p. 7. Pages 8 through 12 of Exhibit B is the Bureau of Prisons' Risk Assessment tool, also known as PATTERN. This report, prepared in September of 2023, identifies that Mr. Jarvis currently has a risk score of eight. Ex. B, p. 10. This score qualifies Mr. Jarvis in the lowest risk category, that being "minimum." *See* https://www.bop.gov/policy/progstat/5100_008cn.pdf (page 10 of the file details there are four security levels in the Bureau of Prisons: high, medium, low, and minimum. Minimum is a score of zero to eleven points). Yet, Mr. Jarvis is at FCI Elkton, which is a low security facility, and should by all measures be transferred to a minimum-security facility like a federal prison camp.

Given Mr. Jarvis's lack of criminal history, being nineteen years old during his offense, having served 30 years of actual incarceration, his extraordinary efforts towards rehabilitation over the last 25 years, and the fact that he has only one disciplinary infraction (for possession of alcohol) since 1998, an individualized assessment of his circumstances warrant a reduction. Taken together with the gross disparity between his current sentence and his likely sentence under current law, as directed by U.S.S.G. § 1B1.13(b)(6), there exist extraordinary and compelling reasons to grant a reduction. These same circumstances all demonstrate that a reduction is consistent with the statutory sentencing factors under § 3553(a) as set forth in 18 U.S.C. § 3582(c)(2).

**IV.    Mr. Jarvis's Release Plan**

If this Court grants Mr. Jarvis the requested relief, he would go to live with his son, Kardell Henderson, who lives in Solon. Defense counsel has spoken with Kardell, who has indicated that

Mr. Jarvis could come live with him upon his release. Defense counsel has his son's complete addresses and phone number, and can provide it to the probation office if need be, but it is purposely left off this public filing. Mr. Jarvis has been gone for a very long time and has lost many of his family members during his incarceration. He wants to live with his son because he wants to make up for the lost time he missed with his son. His son is employed full-time and works as a home health aide for a number of group homes. He also has connections to assist Mr. Jarvis with immediately entering the workforce. Mr. Jarvis requests this Court reduce his sentence so that he can be immediately released and live with his son. Mr. Jarvis would have no objection if this Court placed Mr. Jarvis on home confinement for the first year of his supervised release term. Mr. Jarvis would also suggest that if this Court reduces his custodial sentence, that the Court could condition the reduction on the term that Mr. Jarvis spent the first six months of his supervised release term at a halfway house in order for his housing situation to be finalized.

**V.     Conclusion**

For the foregoing reasons, Jason Jarvis requests this Court grant him a compassionate release as permitted by 18 U.S.C. § 3582(c)(1)(A). These circumstances demonstrate extraordinary and compelling circumstances to justify a reduction in his custodial sentence under U.S.S.G. § 1B1.13(b)(6). He asks this Court to reduce his sentence to time served and that he immediately be placed on supervised release, with any conditions this Court deems appropriate.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/ Jeffrey B. Lazarus*
JEFFREY B. LAZARUS
Assistant Federal Public Defender
Ohio Bar: 0079525
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216)522-4856   Fax:(216)522-4321
E-mail: jeffrey_lazarus@fd.org

Attorney for Jason Jarvis